Hendrickson v. Beeson & Sullivan.

CHRISTIANA E. HENDRICKSON, PLAINTIFF IN ERROR, V. BEESON AND SULLIVAN, DEFENDANTS IN ERROR.

1. **Landlord and Tenant:** ATTORNMENT: TERMINATION OF LEASE. A leased of B certain real estate for an indefinite term, rent to be paid monthly in advance. B afterwards leased the same property to C for the term of one year, subject to the lease of A, the rent accruing from A to be paid to C. A refused to recognize C as her landlord, and failed to pay rent to him. In an action by C for the possession of the property, it was *Held* that the grant of the reversion by B to C was effectual without an attornment by A to C, and *held*, also, that C, the assignee of the reversion, was entitled to collect the rent accruing after the execution of the conveyance to him which had not been paid to B prior to notice of the assignment. In such case the failure to pay rent to C would terminate the lease of A.

2. ———: FORCIBLE ENTRY AND DETENTION : NOTICE. In the absence of a stipulation to the contrary, where a tenant fails and refuses to pay rent according to the terms of his lease when due, such refusal terminates the lease, and by section 1021 of the civil code he is "holding over his term," and liable to an action for the forcible detention of the property. In such case no other notice than the three days' notice to quit, provided by Sec. 1022, Id., is necessary.

ERROR to the district court for Cass county. Tried below before MITCHELL, J.

*Caldwell & Christie,* for plaintiff in error.

*Beeson & Sullivan, pro se.*

REESE, J.

This was an action of forcible detention of real property. The suit was instituted in the county court of Cass county, on the 21st of October, 1885, by defendants in error, for the possession of a room in what is known as Union Block, in the city of Plattsmouth. From the testimony it appears that plaintiff in error leased the room in question about the second day of June, 1884. The exact terms of the contract are left in doubt, as it was in parol, and the parties to it do not fully agree as to whether it was a contract of lease from month to month, or for an indefinite time. They do agree that the rent was to be paid monthly in advance. This part of the contract was not strictly observed, and the rent was usually paid about the 15th of each current month. The last payment of rent was made on the first day of August, 1885, and a receipt was given acknowledging full payment to the second day of the same month. On the day of this payment—August 1st—the property was leased to defendants in error, by a written lease in the usual form, for the term of one year. The instrument contained the following clause: "And it is further covenanted and agreed between the parties aforesaid, that the said parties of the second part (defendants in error) take all the said rooms, subject to the present renters, of whom they are entitled to collect rents from this date, or require of them the possession of the rooms and to obtain the same at their own expense."

The contention of defendants in error, who were plaintiffs below, was that plaintiff in error had failed, neglected, and refused to pay the rent due them, and was, therefore, holding over her term, under the provisions of section 1021 of the civil code. It seems to be conceded, and is no doubt the law of this country, that a grant of the reversion is effectual without a formal attornment by the lessee. Taylor's Landlord and Tenant, § 442. *Farley v. Thompson,*

15 Mass., 18. *Burden v. Thayer*, 3 Metc., 76. *Baldwin v. Walker*, 21 Conn., 168. *Coker v. Pearsall*, 6 Ala., 542.

In such case the assignee of the reversion will be entitled to the rent accruing after the execution of the conveyance to him and unpaid to the grantor in default of notice to the lessee. *Birch v. Wright*, 1 T. R., 378. *Ruckman v. Astor*, 3 Edw., Ch. 373. *Breeding v. Taylor*, 13 B. Mon., 481.

The principal question in this case, then, is, was plaintiff in error holding over her term by reason of her nonpayment of rent; or, in other words, had her lease been terminated by reason of such non payment?

By the testimony of R. B. Windham, who was the agent of the M. E. Church, the owner of the property, it appears that on the first day of August—the day of the execution of the lease to defendants in error—he informed plaintiff in error of the lease to them, and that after that date the rent would be payable to them. This notice is admitted by plaintiff in error, but she denied the right of the church or its agents to change her landlord without her consent, and therefore refused to pay rent to defendants in error. She also testified that defendants in error had never demanded rent of her, but also says that at one time on a Sunday evening Mr. Sullivan passed her door and said, "Are you making any calculation to pay your rent?" At another time, she testified, he cursed her, called her an improper name, and asked her why she did not pay her rent. These remarks, even if not couched in the most gallant language, taken in connection with her statement to Mr. Windham that she would not pay rent to defendant, must be held a sufficient demand. Plaintiff in error knew to whom the rent was due. The fact that the treatment received by her was unpleasant or even impolite, if such were the case, would not relieve her from the payment of rent according to her contract of lease.

The next inquiry is as to whether or not plaintiff was

entitled to notice of the termination of her tenancy, aside from the three days' notice to quit which was given. This question must be decided in the negative. Section 1020 of the civil code provides that proceedings under the article for the forcible detention of real estate may be had "in all cases against tenants holding over their terms." Section 1021, above cited, provides in effect that the failure to pay rent shall terminate a tenancy, and that "a tenant shall be deemed to be holding over his term whenever he has failed, neglected, or refused to pay the rent or any part thereof, when the same was due," etc. By section 1022 it is provided that, "It shall be the duty of the party desiring to commence an action under this chapter, to notify the adverse party to leave the premises for the possession of which the action is about to be brought, which notice shall be served at least three days before commencing the action," etc. No other notice is required. It seems plain to us that it was the intention of the legislature that the fact of the failure or refusal to pay rent should bring the lessee within the provisions of section 1020, *supra*, and that in such case but one notice was necessary—the notice to quit. If we are correct in this, the remaining question—as to the non-payment of rent—was one of fact, for the determination of the jury. On this they have found, upon sufficient evidence, against plaintiffs in error, and with that we must be content.

Objection is made to the instructions given to the jury by the court, but as they are consistent throughout with the views here expressed, they need not be further noticed.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.